IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| INDUSTRIAL ENVIRONMENTAL SERVICES, LLC, an Oklahoma LLC; and MIKE WILLIAMS, Individually and as Managing Member of INDUSTRIAL ENVIRONMENTAL SERVICES, LLC, an Oklahoma LLC; | § | |
| Plaintiffs, | § | |
| v. | § | Case No. 1:07-cv-0178 |
| WORLD INVESTMENT GROUP LLC (a Delaware LLC); DANIEL H. WILKS; FARRIS WILKS; WILLIAM BARKER; and FRANKLIN AUTRY, all Individually and as members of World Investment Group LLC (a Delaware LLC), | § | |
| Defendants. | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Mike Williams, Individually and as Managing Member of Industrial Environmental Services, LLC (an Oklahoma LLC); and Industrial Environmental Services, LLC (an Oklahoma LLC), Plaintiffs, complain of Daniel H. Wilks, Farris Wilks, William Barker, and Franklin Autry, all Individually and as members of World Investment Group LLC (a Delaware LLC); and World Investment Group LLC (a Delaware LLC), showing the Court as follows:

## I. PARTIES

1. **Plaintiffs.** Plaintiffs are:

a. **Industrial Environmental Services, LLC**, hereafter referred to as"**Industrial Environmental**," is an Oklahoma Limited Liability Company, with its principal office and place of business in Norman, Cleveland County, Oklahoma.

b. **Michael E. Williams**, Individually and as Managing Member of **Industrial Environmental**, hereafter referred to as **"Williams**," is an individual who resides in Cleveland County, Oklahoma.

c. Plaintiffs will be collectively referred to herein as "**Plaintiffs**."

2. **Defendants. Defendants** are:

a. **World Investment Group LLC**, hereafter referred to as "**World**," is a Delaware limited liability company, with its principal offices in Eastland County, Texas. If necessary, **World** may be served with process by serving the person in charge of its Texas office, Daniel H. Wilks, at 425 County Road 168, Cisco, Texas 76437.

b. **Daniel H. Wilks,** hereafter referred to as "**Daniel Wilks,**" individually and as a member of **World. Daniel Wilks** is an individual who resides in Eastland County, Texas. If necessary, **Daniel Wilks** may be served with process at 425 County Road 168, Cisco, Texas 76437.

c. **Farris Wilks**, hereafter referred to as "**Farris Wilks**," individually and as a member of **World. Farris Wilks** is an individual who resides in Eastland County, Texas. If necessary, **Farris Wilks** may be served with process at 2511 County Road 169, Cisco, Texas 76437.

d. **William Barker,** hereafter referred to as "**Barker,**" individually and as a member of **World.** **Barker** is an individual who resides in Tarrant County, Texas. If necessary, **Barker** may be served with process at the Frac-Tech office, located at 4150 International Plaza, Fort Worth, Texas 76109.

e. **Franklin Autry**, hereafter referred to as "**Autry**," individually and as a member of **World.** **Autry** is an individual who resides in Tarrant County, Texas. If necessary, **Autry** may be served with process at the Frac-Tech office, located at 4150 International Plaza, Fort Worth, Texas 76109.

f. Individual Defendants will be collectively referred to as "**Individual Defendants**." All Defendants will be collectively referred to as "**Defendants**."

## II. JURISDICTION

3. **Subject Matter Jurisdiction**. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). The amount in controversy is in excess of $75,000, and there is complete diversity of citizenship.`

4. **Personal Jurisdiction**. All or a substantial part of the acts complained of occurred within the Northern District of Texas. This Court has in personam jurisdiction over **World** because **World** purposefully availed itself of the privilege of conducting business activities in Texas by soliciting **Plaintiffs**, within the Northern District of Texas, to sell their certain ownership interests upon which this suit is based, and did enter into contract with **Plaintiffs** in the District. **World** has also engaged in continuous and systematic business in Texas. The Court has in personam jurisdiction over all **Individual Defendants** because they are individuals who reside in Texas.

## III. VENUE

5. **Northern District of Texas**. Venue is proper in the Northern District of Texas because a substantial portion of the actions upon which the action is based occurred within Eastland County and possibly other counties within the Northern District of Texas.

## IV. FACTUAL ALLEGATIONS

6. In or about 1992, **Williams** founded the predecessor entity to **Industrial Compounding LLC** ("**Industrial Compounding**")**,** a chemical compounding firm in Chickasha, Grady County, Oklahoma. The entity was converted to an Oklahoma limited liability company in or about 2005. **Williams** and his wife were the sole members and owners of **Industrial Compounding**, until it was transferred to **Chem Source** in 2006.

7. In or about 2002, **Williams** founded **Industrial Environmental Services, LLC** ("**Industrial Environmental**"), an Oklahoma limited liability company. **Williams** is the managing member of **Industrial Environmental**.

8. In or about August 2004, **Williams**, **Joe Jacobi** ("**Jacobi**"), **Daniel Wilks**, **Farris Wilks**, **Barker**, and **Autry**, agreed to form **Chem Source, LLC** ("**Chem Source**"). **Chem Source** is a Nevada limited liability company, to be organized and exist under the laws of Nevada, and was established to sell industrial chemicals primarily to energy-related industries. Under the agreement, **Williams** owned 17% of **Chem Source** through **Industrial Environmental**; **Jacobi** owned 17% of **Chem Source**; and **Daniel Wilks**, **Farris Wilks**, **Barker**, and **Autry** combined to own the remaining 66% of **Chem Source** through **World**.

9. **Williams**, individually and through his ownership of **Industrial Compounding,** furnished a significant portion of the cash, equipment, inventory, and expertise from the inception

of **Chem Source** forward. Sometime after its formation, **Daniel Wilks** took control of the decision-making, management, and financial affairs of **Chem Source,** and became manager or *de facto* manager of **Chem Source**. One of **Chem Source's** largest customers was **Frac-Tech Services, LTD** ("**Frac-Tech**"), an entity either owned or controlled by **Daniel Wilks** and the other individual defendants. **Frac-Tech** failed to promptly pay substantial amounts of accounts payable for goods received from **Chem Source**, starving **Chem Source** for cash, and threatening its solvency. **Williams**, individually and through **Industrial Compounding,** was forced to advance his own cash, inventory, and other assets to keep **Chem Source** in business. Despite significant paper profits, **Chem Source**, because of **Daniel Wilk's** actions, was unable to distribute rightful profits to **Williams**. **Chem Source** was, in effect, being used to finance the operation of **Frac-Tech**, to the damage of **Williams** and other **Chem-Source** owners who had no similar interest in **Frac-Tech**.

10.     In late 2006, **Williams** began discussions to sell **Industrial Compounding** to **Chem Source.** Such sale was consummated in or about March 2006, and **Industrial Compounding** became a fully-owned part of **Chem Source.** As an inducement to enter into the transaction, **Daniel Wilks** represented to **Williams** that regular distributions of profit would be made to all the **Chem Source** member/owners. Unknown to **Williams**, at that time or shortly thereafter, **Defendants** began plans and discussions to obtain **Williams'** interests in **Industrial Compounding** and **Chem Source,** by the fraudulent means described below.

11.     **Daniel Wilks** continued to maintain control over the management and financial decision-making of **Chem Source**. **Chem Source** became a very successful marketer of industrial chemicals. However, because of **Frac-Tech's** refusal to promptly pay accounts payable to **Chem Source**, and because of **Daniel Wilk's** use of **Chem Source** as a financial vehicle to benefit **Frac-**

**Tech**, Chem Source failed to make timely distribution of profits to **Williams** as had been represented by **Daniel Wilks**, and was further unable to generate new capital for the growth of **Chem Source**. **Daniel Wilks**, however, continued to represent to **Plaintiffs** that **Frac Tech** was presently unable to pay, but that all amounts accrued would be fully paid.

12. In 2006, it became apparent to **Williams** that, because of the financial drain on **Chem Source** by **Frac Tech**, it was critical to **Chem Source's** that its members all sell part of their interest to an incoming member that could inject new capital and other assets into the business. **Daniel Wilks** continued to assure **Williams** that he was acting in good faith and that all accounts would be settled. **Williams** relied upon and believed **Daniel Wilks**. In August, 2006, **Williams** specifically inquired to **Daniel Wilks** as to whether it would be possible to sell a partial interest in **Chem Source** to such a third-party in order to obtain more capital for its continued operation and growth.

13. In response to **William's** specific request, **Daniel Wilks** represented to **Williams** that, although he had considered and attempted to obtain a new partial owner, such efforts had been unsuccessful, and that he had given up on the idea because it was not feasible. **Daniel Wilks** specifically represented to **Williams** that there would be no partial sale, either directly or indirectly, to any third-party.

14. Unknown to **Williams** and **Industrial Environmental** at the time of the agreement and transfer of their **Chem Source** and **Industrial Compounding** interests to **World**, was that **Defendants** had been in secret negotiations for several months with **Chesapeake Energy Corporation** ("**Chesapeake**"), or a **Chesapeake**-related entity, for **Chesapeake** to acquire an interest, either directly or indirectly, in **Chem Source** and **Industrial Compounding** for a substantial amount of cash and other consideration. The "Chesapeake opportunity" would greatly

and materially enhance the value of **Chem Source** and **Industrial Compounding** by expanding **Chem Source's** markets, business opportunities, and by injecting new capital into the business, and by providing significant cash to its current owners.

15. **Daniel Wilks**, and the other **Defendants** participated in, engineered, and were very much aware of the "Chesapeake opportunity" for the several months leading up to and including August, 2006. Although under a duty to disclose the "Chesapeake opportunity" to **Williams** and **Industrial Environmental**, **Defendants** failed to do so. In fact **Daniel Wilks** specifically represented to **Williams** that there would be no sale or transfer of **Chem Source** or **Industrial Compounding** to a third party, and denied that there were any ongoing negotiations. **Williams** was unaware of the "Chesapeake opportunity," and had no way to learn of it.

16. Within a matter of only days after **Williams** and **Industrial Environmental** were induced by **Defendants**' silence and affirmative misrepresentations to transfer their interests in **Chem Source** and **Industrial Compounding** to **World**, **Defendants**, through a rather complex and premeditated transactional maze, consummated the "Chesapeake opportunity," by closing the sale of a portion of the effective ownership of **Chem Source** and **Industrial Compounding** to **Chesapeake**, resulting in substantial immediate and long-term financial gain for **Defendants** to **Plaintiffs'** detriment.

## V. ALLEGATION OF AGENCY RELATIONSHIP

17. **Agency**. At relevant times, **Daniel Wilks**, **Farris Wilks**, **Barker**, or **Autry** did or performed acts or failures to act, both in their individual capacity, and at times as agents for and on behalf of some or all **Defendants**.

18. Whenever it is alleged herein that **Williams** provided or received any communication, it is alleged that he provided or received the communication or act on behalf of himself and **Industrial Environmental**.

## VI. COUNT ONE: FRAUD IN THE INDUCEMENT

19. **Re-Pleading. Plaintiffs** re-plead the factual allegations contained in Paragraphs 1-18 above.

20. **Affirmative Misrepresentation**. **Daniel Wilks**, on behalf on himself and the other **Defendants** affirmatively represented to **Williams** that discussions and negotiations concerning the sale of part interest in **Chem Source** and **Industrial Compounding** had been terminated, and that no sale or transfer would ensue. Other misleading representations were made to **Williams** by Robert Early, who was acting on behalf of **Defendants.**

21. **Materiality**. The affirmative misrepresentations concerning the "Chesapeake opportunity," were a substantial, important, and material factor in the valuation of **Plaintiffs**' interests in **Industrial Compounding** and **Chem Source**, and in the decision of **Plaintiffs** to sell or not to sell their interests in **Industrial Compounding** and **Chem Source**.

22. **Falsity**. The representations made by and on behalf of **Defendants** to **Plaintiffs** were false at the time they were made.

23. **Intent to Rely**. **Defendants** intended that **Plaintiffs** rely on the false statement of material fact in an effort to induce **Plaintiffs** to rely thereon to their detriment.

24. **Reliance**. **Plaintiffs** specifically relied on **Defendants**' false statements of material facts, by making a decision to sell their interests in **Industrial Compounding** and **Chem Source**, a decision that they would not otherwise have made.

25. **Injury**. **Plaintiffs**' reliance on the false information communicated to them by **Defendants** caused injury to **Plaintiffs**, as hereinafter alleged.

## VII. COUNT TWO: FRAUDULENT NON-DISCLOSURE

26. **Re-Pleading. Plaintiffs** re-plead the factual allegations contained in Paragraphs 1-25 above.

27. **Special Relationship**. Because **Plaintiffs** were substantive co-members of **Chem Source** with **Defendants**, and because **Defendants Daniel Wilks** and **World** had assumed the role of managing member of **Chem Source**, and because of their history of business relationship, business dealings, and personal relationship, there existed a fiduciary or special relationship between **Plaintiffs** and **Defendants**, which imposed a duty upon **Defendants** to disclose all material information regarding the "Chesapeake opportunity" to **Plaintiffs**.

28. **Partial, Incomplete, or Misleading Disclosure**. In addition, a duty was imposed upon **Defendants** to disclose all material facts regarding the "Chesapeake opportunity," because of a partial, incomplete, or misleading disclosure by **Defendants** to **Plaintiffs** that reasonably created a false impression upon **Plaintiffs**. Specifically, **Daniel Wilks**, on behalf of the other **Defendants**, represented to **Williams** that although a possible sale of a portion of **Chem Source** to an energy company had been investigated, the idea had been abandoned. Even if the representation was true when made, **Daniel Wilks** had an affirmative duty to disclose new information which made a prior representation misleading or untrue.

29. **Duty to Disclose**. Plaintiffs and Defendants had developed a close business and personal relationship over their course of dealing. In addition, Defendant Daniel Wilks had become mamger or *de facto* manager of **Chem Source** in the months preceding the Chesapeake transaction,

and was in control of financial matters. **Defendants** and **Plaintiffs** were in a closely-held business together, and **Plaintiffs** held a minority interest. Thus, because of the structural relationship between the parties, **Defendants** owed **Plaintiffs** a duty to disclose all material facts regarding the transaction. Furthermore, because of the personal, special and fiduciary relationship existing from **Defendants** to **Plaintiffs**, and because of any partial or incomplete disclosure that might have occurred, **Defendants** had an affirmative duty to disclose to **Plaintiffs** the existence and all pertinent information regarding the "Chesapeake opportunity."

30. **Failure to Disclose**. Despite the duty to disclose, **Defendants** failed to disclose to **Plaintiffs** the existence of the "Chesapeake opportunity" at or before the time they acquired **Plaintiffs**' interests in **Industrial Compounding** and **Chem Source**. Such silence was deliberate.

31. **Materiality**. The existence of the "Chesapeake opportunity," was a substantial and material factor in the value of **Plaintiffs**' interests in **Industrial Compounding** and **Chem Source**, and in the decision of **Plaintiffs** to sell or not to sell their interest in **Industrial Compounding** and **Chem Source**.

32. **Defendants' Knowledge**. At the time of purchasing **Plaintiffs**' interests, **Defendants** knew that **Plaintiffs** (1) were not aware of the "Chesapeake opportunity," and (2) did not have an equal opportunity to discover the existence of the "Chesapeake opportunity."

33. **Deliberate Silence**. **Defendants** deliberately failed to disclose the "Chesapeake opportunity" to **Plaintiffs** prior to and at the time they acquired **Plaintiffs**' interest for the express purpose of inducing **Plaintiffs** to enter into the transactions.

34. **Intent to Rely.** **Defendants** intended that **Plaintiffs** rely on the omission or concealment.

35. **Reliance**. To the extent necessary, **Plaintiffs** relied on the omission or concealment of the material information as an inducement to enter into the transaction.

36. **Injury**. The nondisclosure of such information caused injury to **Plaintiffs**, as hereinafter alleged.

## VIII. COUNT THREE: STATUTORY FRAUD

37. **Re-Pleading. Plaintiffs** re-plead the factual allegations contained in Paragraphs 1-36 above.

38. **Statutory Fraud**. **Plaintiffs** seek recovery under TEX. BUS & COMM. CODE § 27.01, and would show that (1) **Defendants** made the false representations of existing material facts as described above; (2) that such representations were made for the purpose of inducing **Plaintiffs** to enter into the contract to sell their interests in **Chem Source** and **Industrial Compounding**; (3) that such false statements were relied upon by Plaintiffs in entering into the contract to sell. **Plaintiffs** seek all damages allowed by § 27.01; and (4) that such statements were a proximate and producing cause of damages to **Plaintiffs** as alleged herein. **Plaintiffs** seek all relief allowed by § 27.01. Alternatively, **Plaintiffs** would show that one or more of the **Defendants** (1) had actual awareness that other defendant's representations were false, (2) did not disclose to **Plaintiffs** that the representations were false, and (3) benefitted from the false representations.

## IX. COUNT FOUR: CONSPIRACY TO DEFRAUD

39. **Re-Pleading. Plaintiffs** re-plead the factual allegations contained in Paragraphs 1-38 above.

40. **Combination**. Each of the individual **Defendants** combined together in a conspiracy to defraud **Plaintiffs**, and to use **World** and possibly other entities as vehicles to defraud **Plaintiffs**.

41. **Unlawful Objective**. **Defendants** had as their objective the acquisition of **Plaintiffs**' interests in **Industrial Compounding** and **Chem Source** for a less-than-market value by making the false and misleading representations described above, and further by failing to disclose certain material information regarding the "Chesapeake opportunity."

42. **Meeting of the Minds**. Each of the **Defendants** had a meeting of the minds concerning the object of their conspiracy.

43. **Overt Acts**. At least one of the conspirators committed an overt act in furtherance of the conspiracy. Specifically, one or more of the conspirators made a false representation of material fact to **Plaintiffs** regarding the "Chesapeake opportunity," and one or more of the **Defendants** failed to disclose material information regarding the "Chesapeake opportunity" to **Plaintiffs** prior to the acquisition of **Plaintiffs**' interests.

44. **Injury**. **Defendants**' conspiracy to defraud caused injury to **Plaintiffs**, as hereinafter alleged.

## X. COUNT FIVE: BREACH OF FIDUCIARY AND OTHER DUTIES

45. **Re-Pleading**. **Plaintiffs** re-plead the factual allegations contained in Paragraphs 1-44 above.

46. **Basis of Relationship**. Because **Plaintiffs** were substantive co-members of **Chem Source** with **Defendants**, and because **Defendants Daniel Wilks** and **World** had assumed the role of managing member of **Chem Source** and control of its financial affairs, and because of their history of business dealings and personal relationship, there existed a fiduciary or special relationship between **Plaintiffs** and **Defendants**, which imposed a duty upon **Defendants** to timely and correctly disclose all material information regarding the "Chesapeake opportunity" to **Plaintiffs**.

47. **Breach of Duty of Loyalty and Utmost Good Faith**. **Defendants** owed the duties of loyalty and utmost good faith to **Plaintiffs. Defendants** breached this duty by failing to disclose to **Plaintiffs** all material facts regarding the "Chesapeake opportunity," and by attempting to acquire and acquiring **Plaintiffs**' interests without such material disclosures.

48. **Breach of Duty to Refrain From Self-Dealing**. **Defendants** owed **Plaintiffs** the duty to refrain from self-dealing. However, both before and leading to the sale of **Plaintiffs**' interests to **Defendants**, **Defendants** continually self-dealt to the detriment of **Plaintiffs**.

49. **Breach of Duty of Full Disclosure**. **Defendants** owed **Plaintiffs** the duty of full disclosure of all material facts. **Defendants** breached this duty by failing to fully disclose all material facts regarding the "Chesapeake transaction" to **Plaintiffs**.

50. **Breach of Duty of Fair, Honest Dealing**. **Defendants** owed **Plaintiffs** the duty of fair and honest dealing. **Defendants** breached such duty by failing to disclose to **Plaintiffs** all material facts regarding the "Chesapeake opportunity."

51. **Damage.** As further alleged herein, the aforesaid breaches of duties by **Defendants** was a proximate and producing cause of damage to **Plaintiffs**.

## XI. COUNT SIX: BENEFICIARIES OF THE FRAUD AND BREACH

52. **All Defendants Beneficiaries of Fraud.** Each of the **Defendants** was a beneficiary of the fraud and breach of fiduciary duty, who benefitted from the wrongful acts, and had knowledge of such acts. Therefore, each is liable as a beneficiary of the fraud.

## XII. COUNT SEVEN: NEGLIGENT MISREPRESENTATION

53. **Negligent Misrepresentation**. In the alternative, and without waiving the foregoing, Plaintiffs would show that the representations described above constitute, at the least, negligent

misrepresentation, and that (1) Defendants made a representation to Plaintiffs in the course of a business transaction in which Defendants had a pecuniary interest; (2) Defendants supplied false information to Plaintiffs for use in connection with the transaction; (3) Defendants dis not exercise reasonable care in obtaining or communicating the information; and (4) Plaintiffs suffered pecuniary loss as a direct result of justifiably relying on the representation.

## XII. COUNT EIGHT: BREACH OF CONTRACT

54. **Breach of Contract**. **Defendants** continually breached the formation agreement of **Chem Source** by self-dealing, failure to provide a truthful and adequate accounting, and by failing to make reasonable disbursements of profit, all to **Plaintiffs**' damage.

## XIII. CAUSATION

55. **Proximate and/or Producing Cause**. Each of the acts and omissions by **Defendants** alleged was a proximate and/or producing cause of injury and damages to **Plaintiffs**.

## XIV. CONDITIONS PRECEDENT

56. **Conditions Precedent**. Pursuant to FED. R. CIV. P. 9(c), **Plaintiffs** allege that all conditions precedent have been performed or have occurred.

## XV. DAMAGES

57. **Actual Damages**. **Plaintiffs** seek the difference between the amount they were paid for their interests in **Chem Source** and **Industrial Compounding**, and the actual value of those interests at the time they sold their interests to **World,** in light of all facts relative to the "Chesapeake opportunity," or any other reasonable measure of damages that adequately compensates them for their losses caused by the fraud alleged above.

58. **Exemplary Damages**. Based upon the clear and convincing evidence of **Defendants**' commission of fraud and breach of fiduciary and other duties, **Plaintiffs** seek exemplary damages under, but not limited to, TEX. CIV. PRAC. & REM. CODE, § 41.003(a)(1).

59. **Pre-Judgment Interest. Plaintiffs** seek all pre-judgment interest to which they are entitled at the highest lawful rate.

60. **Post-Judgment Interest. Plaintiffs** seek post-judgment interest at the highest lawful rate.

61. **Costs of Court. Plaintiffs** seek recovery for costs of court.

62. **Joint and Several Liability**. **Defendants** are jointly and severally liable for all damages alleged herein.

## XVI. ATTORNEYS FEES

63. **Attorneys Fees**. **Plaintiffs** seek reasonable and necessary attorneys fees for the prosecution of their action under breach of contract.

## XVII. JURY DEMAND

64. **Jury.** Plaintiffs demand trial by jury.

## CONCLUSION AND PRAYER

**Plaintiffs** pray that **Defendants** be cited to appear herein, and that upon final hearing, **Plaintiffs** have judgment, jointly and severally, against all **Defendants** for all amounts alleged herein, together with attorneys fees, costs of court, and all lawful pre-judgment and post-judgment interest to which they are entitled, and for general relief.

Respectfully submitted,

/s/ John Smithee

John Smithee
Texas State Bar No. 18768800
john@templetonsmithee.com
Brian P. Heinrich
Texas State Bar No. 09382320
brian@templetonsmithee.com
David M. Russell
Texas State Bar No. 17409300
david@templetonsmithee.com
**TEMPLETON, SMITHEE, HAYES, HEINRICH & RUSSELL, L.L.P.**
320 S. Polk, Suite 1000, Lobby Box 5 (79101)
P. O. Box 15010 (79105)
Amarillo, Texas
806-324-0324 – Telephone
806-379-8568 – Facsimile

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing instrument was served upon counsel of record this 29th day of February, 2008, addressed as follows:

| | |
|---|---|
| Mr. Marshall Searcy, Jr.<br>Mr. Derek Anderson<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, Texas 76102<br>*Attorneys for Daniel H. Wilks, Farris Wilks, William Barker, World Investment Group LLC* | Certified Mail, Return Receipt Requested ☐<br>United States Regular Mail ☐<br>Overnight Mail ☐<br>Via Facsimile Transmission ☐<br>Via Hand-Delivery ☐<br>Via Electronic Service ■ |

| | |
|---|---|
| Mr. Walker C. Friedman<br>604 East 4th Street, Suite 200<br>Fort Worth, Texas 76102<br>*Attorneys for Franklin Autry* | Certified Mail, Return Receipt Requested ☐<br>United States Regular Mail ☐<br>Overnight Mail ☐<br>Via Facsimile Transmission ☐<br>Via Hand-Delivery ☐<br>Via Electronic Service ■ |
| Mr. William A. Hicks<br>Ms. Sharon E. Hicks<br>P. O. Box 1587<br>Cisco, Texas 76437<br>*Attorneys for Daniel H. Wilks, Farris Wilks, William Barker, World Investment Group LLC* | Certified Mail, Return Receipt Requested ☐<br>United States Regular Mail ☐<br>Overnight Mail ☐<br>Via Facsimile Transmission ☐<br>Via Hand-Delivery ☐<br>Via Electronic Service ■ |

/s/ John Smithee
John Smithee