IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

---

CAUSE NO. 1:07-CV-0178

---

INDUSTRIAL ENVIRONMENTAL SERVICES, LLC; and
MIKE WILLIAMS, Individually and as Managing Member of
INDUSTRIAL ENVIRONMENTAL SERVICES, LLC,

Plaintiffs,

v.

WORLD INVESTMENT GROUP LLC; DANIEL H. WILKS;
FARRIS WILKS; WILLIAM BARKER; and FRANKLIN AUTRY, all
Individually and as Members of WORLD INVESTMENT GROUP LLC,

Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANT FRANKLIN AUTRY'S
MOTION FOR SUMMARY JUDGMENT**

---

Dated: March 3, 2009

Walker C. Friedman
TX Bar No. 07472500
Christian D. Tucker
TX Bar No. 00795690
FRIEDMAN, SUDER & COOKE, P.C.
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, TX 76102
Telephone: (817) 334-0400
Telecopier: (817) 334-0401

**ATTORNEYS FOR
DEFENDANT FRANKLIN AUTRY**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iv

I.      Summary ..........................................................................................................1

II.     Summary Judgment Evidence..........................................................................4

III.    Relevant Facts..................................................................................................5

        A.      Case Overview .....................................................................................5

                1.      The Players.................................................................................5

                        a.      Plaintiffs ........................................................................5

                        b.      Defendants ......................................................................5

                        c.      Joe Jacobi .......................................................................7

                2.      Chem Source and the Relevant Transaction ..............................7

                3.      Chesapeake Transaction.............................................................8

                4.      Nature of Plaintiffs' Claims Against Autry ............................10

        B.      Autry Did Nothing Wrong..................................................................11

IV.     Argument and Authorities..............................................................................13

        A.      All of Plaintiffs' claims against Autry fail as a matter of law ................13

        B.      All of Plaintiff Mike Williams' claims fail as a matter of law
                due to lack of standing ...........................................................................14

        C.      Plaintiffs' breach of fiduciary duty claims fail as a matter of law .......16

        D.      Plaintiffs' agency claim fails as a matter of law ..................................20

                1.      It is undisputed that Dan Wilks, Farris Wilks, and Bill Barker
                        were not Autry's agents ..........................................................21

                2.      There is no evidence that Dan Wilks, Farris Wilks, and

                Bill Barker were Autry's agents ................................................................22

E.     *Autry did not fraudulently induce any agreement with Plaintiffs* ........................22

      1.     There is no evidence of one or more essential elements of
            Plaintiffs' fraudulent inducement claim against Autry .............................22

      2.     The evidence establishes that Plaintiffs' fraudulent inducement claim
            against Autry fails as a matter of law........................................................23

F.     *Autry did not commit fraud by nondisclosure against Plaintiffs* .........................23

G.    *Autry did not commit statutory fraud* ...................................................................24

      1.     There is no evidence of one or more essential elements of
            Plaintiffs' statutory fraud claim against Autry .........................................24

      2.     The evidence establishes that Plaintiffs' statutory fraud claim against
            Autry fails as a matter of law....................................................................25

H.    *Autry did not conspire to defraud Plaintiffs* ........................................................26

      1.     There is no evidence of one or more essential elements of
            Plaintiffs' conspiracy to defraud claim against Autry ..............................26

      2.     The evidence establishes that Plaintiffs' conspiracy to defraud claim
            against Autry fails as a matter of law........................................................26

I.     *Autry did not benefit from any alleged fraud or breach of fiduciary duty* ...........27

      1.     There is no evidence that Autry benefitted ...............................................27

      2.     The evidence establishes that Autry did not benefit..................................27

      3.     The evidence establishes that Autry had no knowledge
            of fraud or breach of fiduciary duty...........................................................29

J.     *Autry did not make any negligent misrepresentations to Plaintiffs* .....................30

      1.     There is no evidence of one or more essential elements of
            Plaintiffs' negligent misrepresentation claim against Autry .....................30

      2.     The evidence establishes that Plaintiffs' negligent
            misrepresentation claim against Autry fails as a matter of law .................31

K.    *Autry did not breach any contract with Plaintiffs* .................................................31

1.   There is no evidence of one or more essential elements of
     Plaintiffs' breach of contract claim against Autry ....................................31

2.   The evidence establishes that Plaintiffs' breach of contract claim
     against Autry fails as a matter of law........................................................32

L.   *Plaintiffs did not suffer any damages* ...................................................32

M.   *Plaintiffs' exemplary damages claim fails as a matter of law* .............................33

N.   *Plaintiffs' claim for attorneys fees fails as a matter of law* ..................................33

PRAYER.................................................................................................................33

SIGNATURE PAGE .................................................................................................34

CERTIFICATE OF SERVICE ...................................................................................35

APPENDIX (filed separately)

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    **PAGE**

*Aguiar v. Segal*,
    167 S.W.3d 443 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ............................32

*Allied Vista v. Holt*,
    987 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ...................... 30-31

*Baty v. Protech Insurance Agency*,
    63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ..............................26

*Bradford v. Vento*,
    48 S.W.3d 749 (Tex. 2001).................................................................................23

*Brown v. Todd*,
    53 S.W.3d 297 (Tex. 2001)................................................................................15

*Cano v. North Texas Nephrology Associates, P.A.*,
    99 S.W.3d 330 (Tex. App.—Fort Worth 2003, no pet.)....................................................22

*Deere v. Ingram*,
    198 S.W.3d 96 (Tex. App.—Dallas 2006, pet. granted)...................................................20

*D.S.A., Inc. v. Hillsboro ISD*,
    973 S.W.2d 662 (Tex. 1998)..............................................................................30

*First National Acceptance Co. v. Bishop*,
    187 S.W.3d 710 (Tex. App.—Corpus Christi 2006, no pet.) ...........................................21

*Lee v. Hasson*,
    No. 14-05-00004-CV,
    2007 Tex. App. LEXIS 622 (Tex. App.—Houston [14th Dist.]
    Jan. 30, 2007, pet. denied) ...............................................................................19

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
    991 S.W.2d 787 (Tex. 1999)..............................................................................30

*Meyer v. Cathey*,
    167 S.W.3d 327 (Tex. 2005)...................................................................... 16, 19-20, 20

*Redmon v. Griffith*,
    202 S.W.3d 225 (Tex. App.—Tyler 2006, pet. denied)....................................................15

*Snydergeneral Corp. v. Great American Ins. Co.,*
   928 F. Supp. 674 (N.D. Tex. 1996), *aff'd*, 133 F.3d 373 (5th Cir. 1998)............................19

*Zarnow v. Clinics of North Texas,*
   No. 2-06-418-CV,
   2007 Tex. App. LEXIS 7091 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.)...............15

*Zuniga v. Wooster Ladder Co.,*
   119 S.W.2d 856 (Tex. App.—San Antonio 2003, no pet.)................................................32

**STATUTES AND RULES**                                                                                 **PAGE**

DEL. CODE tit. 6, § 18-303 ................................................................................................13

NEV. REV. STAT. ANN. § 86.371............................................................................................ 13-14

TEX. BUS. & COM. CODE § 27.01 ...........................................................................................25

TEX. REV. CIV. STAT. ANN. art. 1528n, § 4.03 .............................................................................14

TEX. REV. CIV. STAT. ANN. art. 1528n, § 7.02 .......................................................... 13, 17-18, 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| INDUSTRIAL ENVIRONMENTAL SERVICES, LLC, an Oklahoma LLC; and MIKE WILLIAMS, Individually and as Managing Member of INDUSTRIAL ENVIRONMENTAL SERVICES, LLC, An Oklahoma LLC, | §§§§§§§ | |
| Plaintiffs, | §§ | |
| v. | § | Cause No. 1:07-CV-0178 |
| | § | |
| WORLD INVESTMENT GROUP LLC (a Delaware LLC); DANIEL H. WILKS; FARRIS WILKS; WILLIAM BARKER; and FRANKLIN AUTRY, all Individually and as Members of World Investment Group LLC (a Delaware LLC), | §§§§§§§ | |
| Defendants. | §§ | |

## BRIEF IN SUPPORT OF
## DEFENDANT FRANKLIN AUTRY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Franklin Autry ("Autry") files this brief in support of his motion for summary judgment.

## I.

## Summary

In accordance with Federal Rule of Civil Procedure 56(a), Autry seeks a summary judgment upon all of the claims asserted by Plaintiffs, Industrial Environmental Services, LLC and Mike Williams (collectively, "Plaintiffs"), on the following grounds:

1.   All of Plaintiffs' claims fail as a matter of law because Autry cannot be held individually liable for any alleged wrongful acts committed by World Investment Group LLC (a Delaware LLC) ("WIG") by virtue of simply being a member or manager of WIG.

2.   All of Plaintiff Mike Williams' ("Williams") claims fail as a matter of law because Williams lacks standing to assert any such claims.

3.   Plaintiffs' breach of fiduciary or special duty claims fail as a matter of law because the undisputed summary judgment evidence establishes that there was no fiduciary or special relationship between Plaintiffs and Autry.

4.   Plaintiffs' claim that Daniel H. Wilks ("Dan Wilks"), Farris Wilks, and/or William Barker ("Bill Barker") acted as an agent for Autry fails as a matter of law because: (i) the undisputed summary judgment evidence establishes that none of them acted as an agent for Autry; and/or (ii) there is no evidence that any of them acted as an agent for Autry.

5.   Plaintiffs' fraud in the inducement claim fails as a matter of law because: (i) there is no evidence of one or more essential elements of Plaintiffs' claim of fraud in the inducement against Autry; and/or (ii) the undisputed summary judgment evidence establishes that Autry did not fraudulently induce any agreement at issue.

6.   Plaintiffs' fraud by non-disclosure claim fails as a matter of law because the undisputed summary judgment evidence establishes that Autry did not owe Plaintiffs a duty to disclose.

7.   Plaintiffs' statutory fraud claim fails as a matter of law because: (i) there is no evidence of one or more essential elements of Plaintiffs' claim of statutory fraud against Autry;

and/or (ii) the undisputed summary judgment evidence establishes that Autry did not commit statutory fraud.

8.    Plaintiffs' conspiracy to defraud claim fails as a matter of law because:  (1) there is no evidence of one or more essential elements of Plaintiffs' conspiracy claim against Autry; and/or (2) the undisputed summary judgment evidence establishes that Autry did not have a meeting of the minds on the object or course of action of defrauding Plaintiffs.

9.    Plaintiffs' claim that Autry was a beneficiary of any alleged fraud and/or breach of fiduciary duty fails as a matter of law because:  (i) there is no evidence that Autry benefitted from any alleged fraud and/or breach of fiduciary duty and/or that Autry had knowledge of any alleged fraud and/or breach of fiduciary duty; (ii) the undisputed summary judgment evidence establishes that Autry did not benefit; and/or (iii) the undisputed summary judgment evidence establishes that Autry did not have knowledge of any alleged fraud and/or breach of fiduciary duty.

10.    Plaintiffs' negligent misrepresentation claim fails as a matter of law because:  (i) there is no evidence of one or more essential elements of negligent misrepresentation against Autry; and/or (ii) the undisputed summary judgment evidence establishes that Autry never made any negligent misrepresentations to Plaintiffs.  Also, Plaintiffs' only damage theory is not based on out-of-pocket damages, which are the only damages recoverable for negligent misrepresentation. Accordingly, there is no evidence of damages.

11.    Plaintiffs' breach of contract claim fails as a matter of law because: (i) there is no evidence of one or more essential elements of Plaintiffs' breach of contract claim against Autry;

and/or (ii) the undisputed summary judgment evidence establishes that Autry did not have a contract with Plaintiffs and therefore could not breach any contract with Plaintiffs.

12.     Plaintiffs' claim for damages fails as a matter of law because all of Plaintiffs' claims against Autry for which they seek damages fail as a matter of law.

13.     Plaintiffs' exemplary damages claim fails as a matter of law because Plaintiffs' claims for fraud and breach of fiduciary and other duties against Autry fail as a matter of law.

14.     Plaintiffs' claim for attorneys fees fails as a matter of law because Plaintiffs' breach of contract claim fails as a matter of law.

## II.

## Summary Judgment Evidence

Unless otherwise indicated, all the summary judgment evidence cited in this brief is contained in the Appendix of Exhibits in Support of Defendant Franklin Autry's Motion for Summary Judgment, which was filed contemporaneously with this brief.  Autry expressly incorporates all such evidence by reference.

Each citation to the evidence will first be identified by exhibit number or letter and followed by a pinpoint citation to the page at which it can be found in the Appendix.  The Appendix is bates-labeled consecutively beginning at the bottom right-hand corner on the first page of Exhibit A at 0001 through the last page of the last exhibit, Exhibit 109 at 0150.  Where appropriate and possible, the page, line or paragraph specifically referenced follows the identified page in the Appendix, for example, Ex. E at 0050, pp. 255/8-257/9 would correspond to Appendix page 0050 at deposition page 255, line 8 through deposition page 257, line 9.

## III.

## <u>Relevant Facts</u>

### A.    *Case Overview*

This lawsuit arises out of the sale of Plaintiff Industrial Environmental Services, LLC's ("IES") 17% interest in Chem Source LLC ("Chem Source") to World Investment Group LLC (a Delaware LLC) ("WIG") for $6 million in August 2006. That transaction was negotiated by Dan Wilks, on behalf of WIG, and Michael Williams, on behalf of IES. Frank Autry was not involved. (Ex. E at 0048, pp. 248/12-249/9 (Williams Dep.);  Ex. B at 0008-0009, ¶6 (Autry Decl.)).

### 1.    **The Players**

#### a.    *Plaintiffs*

(1)    IES – a former member of Chem Source, which owned the 17% interest sold to WIG.[1]

(2)    Michael Williams – he was never a member of Chem Source, but joins this lawsuit individually and as managing member of IES.

#### b.    *Defendants*

(1)    WIG – a member of Chem Source owning a 66% interest in same prior to acquiring IES's 17% interest.  (Ex. E at 0039, p. 126/13-16 (Williams Dep.))

---

[1]    The Chem Source Operating Agreement defines a "member" as follows: ". . . [E]ach person who holds any Units. A person who ceases to hold any Units shall cease to be a Member." (Ex. 68 at 0057, Art. I, § 1.1). A "Unit" is defined as "a Member's interest in [Chem Source], including the right to vote, approve and consent as a Member to matters relating to [Chem Source] and the right to be allocated income, gain, loss, deduction, credit or

(2)    Daniel H. Wilks ("Dan Wilks") – he was not a member of Chem Source, just a member and manager of WIG. Dan Wilks owned a 34% interest in WIG at the time of WIG's purchase of IES's 17% interest in Chem Source and negotiated said purchase with Mike Williams. After that transaction and as part of the restructuring of WIG, Dan Wilks' interest in WIG increased to 42%. Dan Wilks controlled WIG at all relevant times.

(3)    Farris Wilks – he was not a member of Chem Source, just a member and manager of WIG. Farris Wilks is Dan Wilks' brother and also owned a 34% interest in WIG at the time of WIG's purchase of IES's 17% interest in Chem Source. After that transaction and as part of the restructuring of WIG, Farris Wilks' interest in WIG increased to 42%.

(4)    William Barker ("Bill Barker") – he was not a member of Chem Source, just a member and manager of WIG. Bill Barker owned a 16% interest in WIG at the time of WIG's purchase of IES's 17% interest in Chem Source. After that transaction and as part of the restructuring of WIG, Bill Barker's interest in WIG decreased to 8%.

---

similar items, and to receive distributions from [Chem Source]." (*Id.*)

(5)     Frank Autry – he was not a member of Chem Source, (Ex. E at 0048, p. 248/3-8 (Williams Dep.)), just a member and manager of WIG. Frank Autry owned a 16% interest in WIG at the time of WIG's purchase of IES's 17% interest in Chem Source. After that transaction and as part of the restructuring of WIG, Autry's interest in WIG decreased to 8%.

c.     *Joe Jacobi ("Jacobi")*

Jacobi is a former member and President of Chem Source, who owned the other 17% interest sold to WIG at the same time that IES's 17% interest was sold to WIG. Jacobi's 17% interest was also purchased for $6 million. Jacobi is a plaintiff in an identical lawsuit filed in a Texas state district court in Parker County, Texas, and has the same lawyers as Plaintiffs in this case. (*See* Ex. 109 at 0136-0150 (Jacobi's Second Am. Original Pet.); Ex. A at 0002, ¶5 (Tucker Decl.)).

2.     **Chem Source and the Relevant Transaction**

Chem Source was formed in August 2004. Chem Source is a Nevada limited liability company, and was established to sell industrial chemicals primarily to energy-related industries. Prior to IES's and Jacobi's sale of their respective interests in Chem Source, the ownership interests in Chem Source were as follows:

WIG     66%

IES     17%

Jacobi        17%.

In August 2006, IES and Jacobi sold their respective interests in Chem Source to WIG. (Ex. E at 0042, p. 176/13-20 (Williams Dep.)). Dan Wilks negotiated the purchase of IES's Chem Source units with Mike Williams on or about August 25, 2006. (Ex. E at 0048, pp. 248/12-249/9 (Williams Dep.); Ex. B at 0008-0009, ¶6 (Autry Decl.)). When that transaction closed, WIG owned 100% of Chem Source. (Ex. B at 0004-0006, ¶¶3-4(1) (Autry Decl.)).

The relevant Sale and Purchase Agreement (the "Agreement") is dated effective August 25, 2006, and is between IES, as seller, and WIG, as buyer. (Ex. 94 at 0088; *see* Ex. E at 0043, p. 190/15-21 (Williams Dep.)). Under the Agreement, IES sold its 17% interest in Chem Source to WIG for $6 million. (Ex. 94 at 0088, ¶2; Ex. E at 0043, pp. 190/24-191/11 (Williams Dep.)). The Agreement provides in pertinent part that:

> [IES] has been given access to such information regarding [Chem Source] as [IES] has requested and has obtained such information regarding [Chem Source] as [IES] desires. Except for [WIG's] covenants in this Agreement, [IES] is not relying on any representation, warranty or covenant from [WIG] with respect to this transaction, including the purchase price for the Units sold by [IES].

(Ex. 94 at 0089, ¶3(f); Ex. E at 0043, pp. 191/16-192/24, 0044, pp. 202/10-204/4 & 0045, p. 214/9-13 (Williams Dep.)).

### 3.     Chesapeake Transaction

In or around late August 2006, after WIG purchased IES's and Jacobi's interests in Chem Source, Chesapeake Operating, Inc. ("Chesapeake") paid approximately $254 million to acquire what was effectively a 19.9% minority interest in the subsidiaries and/or affiliates of WIG. After

which, WIG retained what was effectively an 80.1% majority interest in those same subsidiaries and/or affiliates.[2]

After the Chesapeake transaction, Chem Source was to be wholly-owned by THC Investment LP, which was owned by Chesapeake and WIG both directly and through THC Investment LP's general partner, THC I Investment Inc.  As reflected in the below diagram of the organizational structure before and after the Chesapeake transaction, Chem Source went from being directly owned by WIG, Jacobi, and IES to being directly owned by THC Investment LP (neither WIG nor Chesapeake had a direct interest in Chem Source after the Chesapeake transaction):[3]

---

[2]  The subsidiaries and/or affiliates of WIG in which Chesapeake acquired a direct interest along with Chesapeake's and WIG's respective interests in them are as follows:  (1) THC Investments, L.P. (Chesapeake owns 19.7%;  WIG owns 79.3%;  THC I Investments, Inc. owns 1%);  (2) THC I Investments, Inc. (Chesapeake owns 19.9%;  WIG owns 80.1%);  (3) Frac Tech Services, Ltd. (Chesapeake owns 19.7%;  WIG owns 79.3%;  Frac Tech Management, LLC owns 1%);  and (4) Frac Tech Management, LLC (Chesapeake owns 19.9%;  WIG owns 80.1%). (*See* Ex. B at 0007-0008, ¶4(3) (Autry Decl.)).

[3]  The organization structure does not reflect the subsequent Unit Assignment dated August 31, 2006, executed by Dan Wilks, which transferred all of the Chem Source ownership units to Frac Tech Services Ltd. (990 Chem Source units) and Frac Tech Management LLC (10 Chem Source units), both of which also were owned by Chesapeake and WIG.



(Ex. B at 0004-0008, ¶¶3-4(3) (Autry Decl.)).

### 4.   Nature of Plaintiffs' Claims Against Autry

Plaintiffs admit that their only real complaint against Autry is that Plaintiffs feel that Autry should have disclosed the Chesapeake transaction at some point and did not.  (*See* Ex. E at 0050, 254/4-257/9 (Williams Dep.)).  As explained in Part IV.F. below, however, Autry did not owe Plaintiffs a duty of disclosure.  Nevertheless, Plaintiffs have transformed this one complaint into

claims against Autry for the following: (i) fraudulent inducement; (ii) fraudulent non-disclosure; (iii) statutory fraud; (iv) conspiracy to defraud; (v) breach of fiduciary duty; (vi) negligent misrepresentation; and (vii) breach of contract.

**B.**  *Autry Did Nothing Wrong*

Autry was not involved in negotiating any terms of the purchase of IES's 17% interest in Chem Source by WIG. (Ex. B at 0008-0009, ¶6 (Autry Decl.)). All of the negotiations relating to that deal were between Dan Wilks and Mike Williams. (*Id.*) Autry was essentially out of the loop. (*Id.*) As a minority interest owner in WIG who was not involved in any way with the purchase of IES's interest in Chem Source or with the negotiations surrounding the Chesapeake transaction, Autry simply did nothing to warrant being sued herein. Plaintiffs have admitted as much. More specifically, Plaintiffs admit the following:

(1)     Autry did not make any fraudulent representations to Plaintiffs, (Ex. E at 0047, pp. 243/19-244/3 & 0048, p. 249/14-20 (Williams Dep.); *see also id.* at 0046-0047, pp. 241/25-242/7);

(2)     Autry did not make any negligent misrepresentations to Plaintiffs, (*id.* at 0049, pp. 250/21-252/1);

(3)     Autry did not negotiate any part of this transaction with Plaintiffs. He was not involved in such negotiations, (*id.* at 0040, p. 157/8-16, 0041, p. 159/10-23, 0048, pp. 248/23-249/9 & 0050, pp. 255/8-256/4);

(4)     Autry did not make any partial, incomplete or misleading representations to Plaintiffs on which they base their claim of fraudulent disclosure against Autry, (*id.* at 0048, p. 248/12-16);

(5)     Plaintiffs have no evidence that Dan Wilks was acting on behalf of Autry when Dan Wilks allegedly made a false representation to Plaintiffs, (*id.* at 0047, p. 244/4-18);

(6)     Plaintiffs have no evidence that Dan Wilks, Farris Wilks, or Bill Barker acted as an agent for Autry, (*id.* at 0047, p. 244/19-22);

(7)     Plaintiffs did not even know Autry before entering into a business relationship with Chem Source, (*id.* at 0048, p. 247/18-20);

(8)     Autry was not a member of Chem Source, (*id.* at 0048, p. 248/3-8);

(9)     Autry is not a party to any contracts to which Plaintiffs are also a party, (*id.* at 0049, p. 252/2-8);

(10)    Plaintiffs do not have any evidence that Autry had a meeting of the minds with the other Defendants to engage in fraudulent activity towards Plaintiffs, (*id.* at 0050, p. 256/5-9); and

(11)    Plaintiffs do not have any evidence that Autry was involved in any "secret" negotiations with Chesapeake, (*id.* at 0050, p. 256/10-19).

## IV.

### Argument and Authorities

*A.    All of Plaintiffs' claims against Autry fail as a matter of law.*

In keeping with the fact that Autry did nothing wrong, Plaintiffs admit that their only real complaint against Autry is that Plaintiffs feel that Autry should have disclosed the Chesapeake transaction at some point and did not. (*See* Ex. E at 0050, pp. 254/4-257/9 (Williams Dep.)). However, as explained in Part IV.F. below, Autry did not owe Plaintiffs a duty of disclosure.

With that fact established, it is clear that Plaintiffs are simply trying to hold Autry liable by virtue of the fact that he was a member of WIG, which was a member of Chem Source. (*See, e.g.,* Ex. E at 0047, pp. 244/23-245/21, 0048, p. 248/3-22 & 0049-0050, pp. 252/2-254/3 (Williams Dep.)). However, under Delaware law (which is the applicable law since WIG is a Delaware LLC),[4] Autry cannot be held liable just because he was a member (or manager) of WIG. *See* DEL. CODE tit. 6, § 18-303(a) ("...[T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and <u>no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company</u>.").[5]

---

[4] Section 7.02 of the Texas Limited Liability Company Act provides that the law of incorporation of a foreign LLC (here, Delaware) governs "(1) the internal affairs of the foreign limited liability company, including but not limited to the rights, powers, and duties of its manager and members and matters relating to its ownership, and (2) the liability, if any, of members of the foreign limited liability company for the debts, liabilities and obligations of the foreign limited liability company for which they are not otherwise liable by statute or agreement." TEX. REV. CIV. STAT. ANN. art. 1528n, § 7.02.

[5] Although not applicable, the same is true under Nevada and Texas law. *See* NEV. REV. STAT. ANN. §

Additionally, there is nothing in the Chem Source Operating Agreement (or any other agreement) which would impose liability on Autry just because he was a member (or manager) of a member (or manager) of Chem Source. (*See generally* Ex. 68 at 0057-0073 (Chem Source Operating Agreement); Ex. E at 0038, pp. 124/20-125/20 (Williams Dep.)).

Accordingly, to the extent that any or all of Plaintiffs' claims against Autry are asserted based on the fact that Autry was a member (or manager) of WIG, said claims fail as a matter of law on this threshold ground and Autry is entitled to summary judgment thereon.

Further, and/or in the alternative, each of Plaintiffs' claims against Autry also fail as a matter of law on the additional, individual grounds set forth below.

**B.      *All of Plaintiff Mike Williams' claims fail as a matter of law due to lack of standing.***

As previously stated, Plaintiffs admit that their only real complaint against Autry is that Plaintiffs feel that Autry should have disclosed the Chesapeake transaction at some point and did not. (*See* Ex. E at 0050, pp. 254/4-257/9 (Williams Dep.)). However, as explained in Part IV.F. below, Autry did not owe Plaintiffs a duty of disclosure.

Moreover, even if Autry owed Mike Williams a duty of disclosure (which he did not), Williams has no standing to complain because any and all damages allegedly caused by such failure to disclose were incurred by IES, the entity which allegedly sold its interest in Chem Source for much less than it was worth in light of the Chesapeake transaction, not by Williams, who had no

---

86.371 ("Unless otherwise provided in the articles of organization or an agreement signed by the member or manager to be charged, no member or manager of any limited liability company formed under the laws of this State is individually liable for the debts or liabilities of the company."); TEX. REV. CIV. STAT. ANN. art. 1528n, § 4.03(A) ("Except as and and to the extent the regulations specifically provide otherwise, a member or manager is not liable for the debts, obligations or liabilities of a limited liability company including under a judgment decree, or order of a court.").

interest in Chem Source. (*See* Ex. 94 at 0088, ¶2; Ex. E at 0043, pp. 190/15-191/11 (Williams Dep.)). In other words, any wrong allegedly done by Autry was done to IES, not to Williams.

Under Texas law, "standing limits subject matter jurisdiction to cases involving a <u>distinct injury to the plaintiff</u> and a real controversy between the parties . . . ." *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (emphasis added); *see Redmon v. Griffith*, 202 S.W.3d 225, 233 (Tex. App.— Tyler 2006, pet. denied) ("Without a breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit. Thus, it follows that a plaintiff who seeks individual redress based on allegations concerning wrongs done to a corporation lacks standing.  [¶] . . . Moreover, a corporate shareholder has no individual cause of action for personal damages caused solely by a wrong done to the corporation." (citations omitted)); *see also Zarnow v. Clinics of North Texas*, No. 2-06-418-CV, 2007 Tex. App. LEXIS 7091, at *32-33 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (holding that where the plaintiff was not a party to the contract or agreements allegedly fraudulently induced and subsequently breached, the plaintiff lacked privity of contract and consequently lacked standing to assert claims based on those contracts).

In an apparent attempt to avoid the simple fact that Williams has not suffered a distinct injury as a result of any conduct by Autry, Williams erroneously asserts that he was transferring to WIG not only IES's Chem Source interest, but also Williams' interest in Industrial Compounding. (*See, e.g.,* Pls.' Second Am. Compl. [Doc. No. 77] at p. 15, ¶57 (stating that:  "Plaintiffs seek the difference between the amount they were paid for their interests in Chem Source and Industrial Compounding, and the actual value of those interests at the time they sold their interests to World, in light of all facts relative to the 'Chesapeake opportunity' . . .."); *see also id.* at pp. 7-8, ¶¶14-16).  However,

Williams' interest in Industrial Compounding was not transferred to WIG; it was transferred to Chem Source, almost six (6) months before IES sold its Chem Source interest to WIG. (*See* Ex. 92 at 0074 (Securities Purchase and Sale Agreement which transferred 100% of Industrial Compounding to Chem Source); Ex. E at 0036, pp. 83/20-85/10 (Williams Dep.)).

Accordingly, since Williams has not been personally aggrieved by Autry's alleged conduct, Williams has no standing to complain of such conduct. Therefore, all of Williams' claims against Autry fail as a matter of law.

## C.  *Plaintiffs' breach of fiduciary duty claims fail as a matter of law.*

Plaintiffs allege that Autry (and the other Defendants) breached various fiduciary or special duties owed to Plaintiffs. (*See* Pls.' Second Am. Compl. [Doc. No. 77] at p. 13, ¶¶46-50). As set forth below, Plaintiffs' breach of fiduciary (or special) duty claims fail as a matter of law because the undisputed summary judgment evidence establishes that there did not exist a fiduciary or special relationship between Plaintiffs and Autry. *See Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) ("Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." (internal quotations omitted)).

Plaintiffs set forth the following three grounds for the existence of a fiduciary or special relationship between Plaintiffs and Autry: (i) ". . . Plaintiffs were substantive co-members of Chem Source with Defendants . . ."; (ii) ". . . Defendants Daniel Wilks and [WIG] had assumed the role of managing member of Chem Source and control of its financial affairs . . ."; and (iii) "their history of business dealings and personal relationship . . .." (Pls.' Second Am. Compl. [Doc. No. 77] at p. 13,

¶46). In deposition, however, Plaintiffs admitted that their claim of a fiduciary relationship with Autry is based on nothing more than Mike Williams' subjective (and erroneous) belief that Autry became like a "brother" or friend to Mike Williams, not IES, through their business relationship. (Ex. E at 0048, pp. 246/20-247/23 (Williams Dep.)).

As a threshold matter, Williams' individual subjective belief about his relationship with Autry is totally irrelevant to the issue of whether a fiduciary relationship existed between IES and Autry. Moreover, it is undisputed that: (1) Autry never owned any interest in Chem Source; (2) Autry was never a member of Chem Source; and (3) no relationship between Autry and either Plaintiff pre-existed the time that WIG acquired an interest in Chem Source (Autry did not know Mike Williams before this).

First, with respect to Plaintiffs' "substantive co-member" argument, Plaintiffs admit that Autry was not a member of Chem Source, a Nevada limited liability company. (Ex. E at 0048, p. 248/3-8 (Williams Dep.)). Additionally, Plaintiff Mike Williams is also not a member of Chem Source. (Ex. D at 0025, p. 96/9-16 (Williams Dep.); Ex. E at 0035, pp. 7/24-8/4 (Williams Dep.)). Moreover, neither Autry nor Plaintiffs have any idea what a "substantive co-member" is. (Ex. E at 0048, p. 248/9-11 (Williams Dep.)). Unsurprisingly, Autry has not been able to find anything under Nevada (or Texas law) recognizing such a concept.[6] Accordingly, Plaintiffs' first ground for imposing a fiduciary relationship between Plaintiffs and Autry fails as a matter of law.

---

[6] Chem Source is a Nevada limited liability company. Accordingly, Nevada law should apply to this issue because Section 7.02 of the Texas Limited Liability Company Act provides that the law of incorporation of a foreign LLC (here, Nevada ) governs "(1) the internal affairs of the foreign limited liability company, including but not limited to the rights, powers, and duties of its manager and members and matters relating to its ownership, and (2) the liability, if any, of members of the foreign limited liability company for the debts, liabilities and obligations of the foreign limited liability company for which they are not otherwise liable by statute or agreement." TEX. REV.

Second, Plaintiffs have not alleged that Autry assumed the role of managing member of Chem Source and control of its financial affairs. That is likely because it is undisputed that Autry did no such thing. (Ex. B at 0003, ¶2 (Autry Decl.)). Moreover, even if WIG had done so, it would not make Autry a manager of Chem Source or impose fiduciary duties or liability on Autry just because he was a member (or manager) of WIG (a Delaware LLC), which was a member of Chem Source (a Nevada LLC). (*See* Part IV.A. above). Furthermore, Autry did not assume any role as a managing member of Chem Source, and Autry had no control and exerted no control over Chem Source's financial affairs. (Ex. B at 0003, ¶2 (Autry Decl.)). Autry was only a minority owner in WIG; Dan Wilks and Farris Wilks owned the majority of WIG units and controlled WIG and its actions. (*Id.* at 0003-0004, ¶¶2-3 (Autry Decl.)). Accordingly, Plaintiffs' second ground for imposing a fiduciary relationship between Plaintiffs and Autry fails as a matter of law.

Third, Autry did not have a history of business dealings and a personal relationship with Plaintiffs. (Ex. B at 0003-0004, ¶2 (Autry Decl.)). As previously stated, Plaintiffs admit that their claim of a fiduciary relationship with Autry is based on nothing more than Mike Williams' subjective belief that Autry became like a "brother" or friend through their business relationship. (Ex. E at 0048, pp. 246/20-247/23 (Williams Dep.)). Putting aside the fact that Williams' individual subjective belief about his relationship with Autry is totally irrelevant to the issue of whether a fiduciary relationship existed between IES and Autry, Plaintiffs admit that they did not even know Autry before entering into a business relationship with Chem Source in 2004, a little over two (2) years before the sale of IES's Chem Source units. (Ex. E at 0048, p. 247/18-20 (Williams Dep.);

---

Civ. Stat. Ann. art. 1528n, § 7.02.

Ex. B at 0003-0004, ¶2 (Autry Decl.)). Autry had no knowledge of IES before WIG bought Chem

Source. (Ex. B at 0004, ¶2 (Autry Decl.)). Moreover, in the mere two or so years between Autry

first meeting Plaintiffs (actually, Autry technically could only meet Williams) and the sale of IES's

Chem Source units, Autry only met with Williams for business purposes, did not socialize with him,

did not place any high degree of trust and confidence in him, and did not rely on Plaintiffs for or

provide Plaintiffs with moral, financial, or personal support or guidance. (Ex. B at 0004, ¶2 (Autry

Decl.)).

    Under Texas law,[7]

        **Mere subjective trust does not transform an arm's-length transaction
        into a fiduciary relationship. Rather, in order to establish the existence of an
        informal fiduciary relationship, the record must how that one of the parties
        relied on the other "for moral, financial, or personal support or guidance." The
        length of the relationship is another important factor in determining whether a
        fiduciary relationship should be recognized. But even a longstanding
        relationship of friendship or cordiality is insufficient, without more, to establish
        an informal fiduciary relationship. . . .**

*Lee v. Hasson*, No. 14-05-00004-CV, 2007 Tex. App. LEXIS 622, at *29 (Tex. App.—Houston [14th

Dist.] Jan. 30, 2007, pet. denied) (emphasis added) (citations omitted); *see Meyer v. Cathey*, 167

---

    [7] Autry submits that Texas law applies to the issue of whether an informal fiduciary relationship exists
because this allegation does not rely on Autry's status as a member of WIG (a Delaware limited liability company)
or WIG's status as a member of Chem Source (a Nevada limited liability company). In other words, the focus is not
on the internal affairs of a foreign limited liability company, which would require applying the law of the state of the
foreign limited liability company's formation. *See* TEX. REV. CIV. STAT. ANN. art. 1528n, § 7.02. Instead, the focus
is on the alleged history of business dealings and the alleged personal relationship between Autry and the Plaintiffs,
which requires the application of Texas law because Texas has the most significant relationship to these issues. *See
Snydergeneral Corp. v. Great American Ins. Co.*, 928 F. Supp. 674, 677 (N.D. Tex. 1996) ("Texas has adopted the
'most significant relationship' test in both contract and tort cases."), *aff'd*, 133 F.3d 373 (5th Cir. 1998). "In a tort
case[, like one for breach of fiduciary duty,] the court must consider: (1) the place where the injury occurred; (2) the
place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation,
and place of business of the parties; and (4) the place where the relationship between the parties is centered."
*Snydergeneral*, 928 F. Supp. at 677. Plaintiffs allege that all or a substantial part of the acts complained of occurred

S.W.2d 327, 330-31 (Tex. 2005) (holding that a business relationship did not transform into a fiduciary relationship where, among other things, one party trusted the other to treat him fairly and keep accurate financial records and where the parties were friends and frequent dining partners for four years); *Deere v. Ingram*, 198 S.W.3d 96, 102-03 (Tex. App.—Dallas 2006, pet. granted) ("The fact that Deere trusted Ingram or the fact that they were friends does not transform their business relationship into a fiduciary relationship."); *see also Meyer*, 167 S.W.2d at 331 ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."). Accordingly, Plaintiffs' third ground for imposing a fiduciary relationship between Plaintiffs and Autry fails as a matter of law.

Based on the foregoing, the Court should find that all of Plaintiffs' breach of fiduciary (or special) duty claims fail as a matter of law.

**D.   *Plaintiffs' agency claim fails as a matter of law.***

Plaintiffs allege that Daniel Wilks, Farris Wilks, and/or Bill Barker acted as agents for Autry. (*See* Pls.' Second Am. Compl. [Doc. No. 77] at p. 8, ¶17). As set forth below, Plaintiffs' claim that Dan Wilks, Farris Wilks, and/or Bill Barker acted as an agent for Autry fails as a matter of law because: (1) the undisputed summary judgment evidence establishes that none of them acted as an agent for Autry; and/or (2) there is no evidence that any of them acted as an agent for Autry. Accordingly, any of Plaintiffs' claims against Autry which are premised on the notion that Autry is

---

in Texas and that all Defendants reside in Texas. (*See* Pls.' Second Am. Compl. [Doc. No. 77] at ¶4). Accordingly, Texas law should apply to this issue.

somehow vicariously liable for the other Defendants' bad acts or omissions under an agency theory also fail as a matter of law.

### 1. It is undisputed that Dan Wilks, Farris Wilks, and Bill Barker were not Autry's agents.

Under Texas law,

> The question of whether a principal-agent relationship exists under established facts is a question of law for the court. **An agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal. A principal-agent relationship is not presumed, and the party asserting the relationship has the burden of proving it. The party claiming agency must prove the principal has both the right to assign the agent's task and the right to control the means and details by which the agent will accomplish the task.** The principal's extent of control over the details of accomplishing the assigned task primarily distinguishes the status of agent from that of independent contractor. **The right of control is "the supreme test" in establishing an agency relationship.**

*First National Acceptance Co. v. Bishop*, 187 S.W.3d 710, 714 (Tex. App.—Corpus Christi 2006, no pet.) (citations omitted) (emphasis added).

Autry did not authorize Dan Wilks, Farris Wilks, or Bill Barker to act for him as Autry's agent or otherwise. (Ex. B at 0008, ¶5 (Autry Decl.)). Autry did not have any right to assign tasks to Dan Wilks, Farris Wilks, or Bill Barker. (*Id.*) Autry did not have any right to control Dan Wilks, Farris Wilks, or Bill Barker in relation to any task. (*Id.*) Autry was a minority owner (member) of WIG. (*Id.* at ¶2).

Accordingly, Autry is entitled to a summary judgment on Plaintiffs' claim that Dan Wilks, Farris Wilks, and/or Bill Barker acted as Autry's agent.

**2.     There is no evidence that Dan Wilks, Farris Wilks, and Bill Barker were Autry's agents.**

Further, and/or in the alternative, after thorough discovery, there is no evidence that Dan Wilks, Farris Wilks, and/or Bill Barker were Autry's agents. Plaintiffs admit this. (*See* Ex. E at 0047, p. 244/19-22 (Williams Dep.); *see also id.* at 0047, p. 244/4-18). Additionally, there is no evidence that Autry ever gave Dan Wilks or anyone else authority to act as Autry's agent.

Accordingly, Autry is entitled to a summary judgment on Plaintiff's claim that Dan Wilks, Farris Wilks, and/or Bill Barker acted as Autry's agent on this additional, alternative ground.

**E.     *Autry did not fraudulently induce any agreement with Plaintiffs.***

Plaintiffs allege that Autry fraudulently induced Plaintiffs to sell IES's units in Chem Source. (Pl.'s Second Am. Compl. [Doc. No. 77] at pp. 8-9, ¶¶20-25). This claim fails as a matter of law because: (1) there is no evidence of one or more essential elements of Plaintiffs' fraudulent inducement claim against Autry; and/or (2) the undisputed summary judgment evidence establishes that Autry did not fraudulent induce any agreement at issue.

**1.     There is no evidence of one or more essential elements of Plaintiffs' fraudulent inducement claim against Autry.**

The elements of fraudulent inducement are (1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Cano v. North Texas Nephrology Associates, P.A.*, 99 S.W.3d 330, 339 (Tex. App.—Fort Worth 2003, no pet.) (internal quotations and citations omitted). After thorough discovery, there is simply no evidence of any of the following: (1) that Autry made any material misrepresentation to Plaintiffs, (*see* Ex. E at 0047, pp. 243/19-244/3 & 0048, p. 249/14-20 (Williams Dep.); *see also id.* at

0046-0047, pp. 241/25-242/7); (2) that Autry made any material misrepresentation to Plaintiffs which was false; (3) that Autry knew any alleged material misrepresentation made to Plaintiffs was either false when made or was asserted without knowledge of its truth; (4) that Autry intended Plaintiffs to act upon any alleged material misrepresentation; (5) that Plaintiffs relied upon such a material misrepresentation by Autry; or (6) that any alleged material misrepresentation by Autry caused Plaintiffs' injury.   Accordingly, Autry is entitled to a summary judgment finding that Plaintiffs' claim in this regard fails as a matter of law on no-evidence grounds.

> **2.   The evidence establishes that Plaintiffs' fraudulent inducement claim against Autry fails as a matter of law.**

According to Plaintiffs' own deposition testimony, Autry did not make any fraudulent representations to Plaintiffs. (*See* Ex. E at 0047, pp. 243/19-244/3 & 0048, p. 249/14-20 (Williams Dep.); *see also id.* at 0046-0047, pp. 241/25-242/7).   Accordingly, based on the undisputed summary judgment evidence, Autry is entitled to a summary judgment finding that Plaintiffs' fraudulent inducement claim against Autry fails as a matter of law on this additional ground.

**F.   *Autry did not commit fraud by nondisclosure against Plaintiffs.***

Plaintiffs allege that Autry committed fraud by nondisclosure. (Pl.'s Second Am. Compl. [Doc. No. 77] at pp. 9, ¶¶27-36).   This claim fails as a matter of law because the undisputed summary judgment evidence establishes that Autry did not owe Plaintiffs a duty to disclose. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent.   Whether such a duty exists is a question of law." (citations omitted)).

Plaintiffs allege that Autry owed them a duty to disclose based on: (i) the existence of a special or fiduciary relationship between Plaintiffs and Autry; and/or (ii) a partial, incomplete, or misleading disclosure by Defendants to Plaintiffs that reasonably created a false impression upon Plaintiffs. (Pl.'s Second Am. Compl. [Doc. No. 77] at pp. 9, ¶¶27-29). First, as set forth in Part IV.C. above, there was no special or fiduciary relationship between Plaintiffs and Autry. Second, according to Plaintiffs' own deposition testimony, Autry did not make any partial, incomplete, or misleading representations to them. (*See* Ex. E at 0048, p. 248/12-16 (Williams Dep.)). This makes sense given that Plaintiffs negotiated this transaction with Dan Wilks, not Autry. Accordingly, based on the undisputed summary judgment evidence, Autry did not owe Plaintiffs a duty to disclose. Therefore, Plaintiffs' fraudulent non-disclosure claim against Autry fails as a matter of law.

## G.   *Autry did not commit statutory fraud.*

Plaintiffs allege that Autry committed statutory fraud in inducing Plaintiffs to sell IES's units in Chem Source, a limited liability company. (Pl.'s Second Am. Compl. [Doc. No. 77] at pp. 8-9, ¶¶20-25). This claim fails as a matter of law because: (1) there is no evidence of one or more essential elements of Plaintiffs' statutory fraud claim against Autry; and/or (2) the undisputed summary judgment evidence establishes that Autry did not commit statutory fraud.

### 1.   There is no evidence of one or more essential elements of Plaintiffs' statutory fraud claim against Autry.

The elements of statutory fraud are the following: (1) a transaction involving real estate or stock; (2) during the transaction, the defendant (a) made a false representation of fact, (b) made a false promise, or (c) had actual awareness of the falsity of a representation or promise made by another and benefited by not disclosing that said representation or promise was false; (3) the false

representation or promise was made for the purpose of inducing the plaintiff to enter into a contract; (4) the plaintiff relied on the false representation or promise by entering into the contract; and (5) the reliance caused the plaintiff injury. *See* TEX. BUS. & COM. CODE § 27.01.

After thorough discovery, there is simply no evidence of any of the following: (1) that Autry made a false representation of fact or a false promise to Plaintiffs, (*see* Ex. E at 0047, pp. 243/19-244/3 & 0048, p. 249/14-20 (Williams Dep.); *see also id.* at 0046-0047, pp. 241/25-242/7); (2) that Autry had actual awareness of the alleged falsity of a representation or promise made by another to Plaintiffs, (*see id.* at 0047, p. 245/15-21 & 0048, pp. 248/23-249/13 (Williams Dep.)); (3) that Autry benefited by not disclosing to Plaintiffs that any alleged representation or promise by another was false, (*see id.* at 0049, p. 250/5-20 (Williams Dep.)); and/or (4) that Autry made any false representation or promise for the purpose of inducing Plaintiffs to enter into a contract. Accordingly, Autry is entitled to a summary judgment finding that Plaintiffs' statutory fraud claim against Autry fails as a matter of law on no-evidence grounds.

### 2. The evidence establishes that Plaintiffs' statutory fraud claim against Autry fails as a matter of law.

According to Plaintiffs' own deposition testimony, Autry did not make any fraudulent representations to Plaintiffs. (*See* Ex. E at 0047, pp. 243/19-244/3 & 0048, p. 249/14-20 (Williams Dep.)). Moreover, Autry did not make any false promises to Plaintiffs, did not have any actual awareness of the falsity of any alleged representation or promise made by any other person to Plaintiffs, and did not benefit by not disclosing that any alleged representation or promise by another was false. (Ex. B at 0008-0009, ¶6 (Autry Decl.); Ex. C at 0016-0019, ¶¶5-13 (Ranallo Decl.)). Accordingly, based on the undisputed summary judgment evidence, Autry is entitled to a summary judgment finding that Plaintiffs' statutory fraud claim against Autry fails as a matter of law on this additional ground.

**H.**     *Autry did not conspire to defraud Plaintiffs.*

Plaintiffs allege that Autry conspired with the other Defendants to defraud Plaintiffs. (Pl.'s Second Am. Compl. [Doc. No. 77] at p. 12, ¶¶40-44).  This claim fails as a matter of law because: (1) there is no evidence of one or more essential elements of Plaintiffs' conspiracy claim against Autry; and/or (2) the undisputed summary judgment evidence establishes that Autry did not have a meeting of the minds on the object or course of action of defrauding Plaintiffs.

**1.    There is no evidence of one or more essential elements of Plaintiffs' conspiracy to defraud claim against Autry.**

The elements of civil conspiracy are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages. *See Baty v. Protech Insurance Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).    After thorough discovery, there is simply no evidence that Autry had a meeting of the minds with any other person on the object and/or course of action of defrauding Plaintiffs. (*See* Ex. E at 0050, p. 256/5-9 (Williams Dep.)). Accordingly, Autry is entitled to a summary judgment finding that Plaintiffs' conspiracy to defraud claim fails as a matter of law on no-evidence grounds.

**2.    The evidence establishes that Plaintiffs' conspiracy to defraud claim against Autry fails as a matter of law.**

According to Plaintiffs' own deposition testimony, Autry did not make any fraudulent representations to Plaintiffs. (*See* Ex. E at 0047, pp. 243/19-244/3 & 0048, p. 249/14-20 (Williams Dep.)).  Moreover,  Autry did not make any false promises to Plaintiffs, did not have any actual awareness of the falsity of any alleged representation or promise made by any other person to Plaintiffs, did not have a meeting of the minds with any other person on the object and/or course of action of defrauding Plaintiffs, and did not benefit by not disclosing that any alleged representation or promise by another was false. (Ex. B at 0008, ¶6 (Autry Decl.);  Ex. C at 0016-0019, ¶¶5-13

(Ranallo Decl.)).   Accordingly, based on the undisputed summary judgment evidence, Autry is entitled to a summary judgment finding that Plaintiffs' conspiracy to defraud claim against Autry fails as a matter of law on this additional ground.

## I.     *Autry did not benefit from any alleged fraud or breach of fiduciary duty.*

Plaintiffs allege that Autry "was a beneficiary of the fraud and breach of fiduciary duty, who benefited from the wrongful acts, and had knowledge of such acts." (Pl.'s Second Am. Compl. [Doc. No. 77] at p. 14, ¶52). This claim fails as a matter of law because: (1) there is no evidence that Autry benefitted from any alleged fraud and/or breach of fiduciary duty, and/or that Autry had knowledge of any alleged fraud and/or breach of fiduciary duty; (2) the undisputed summary judgment evidence establishes that Autry did not benefit, (in fact, Autry lost money on this deal); and/or (3) the undisputed summary judgment evidence establishes that Autry did not have knowledge of any alleged fraud and/or breach of fiduciary duty.

### 1.    There is no evidence that Autry benefitted.

After thorough discovery, there is no evidence that Autry benefitted from any alleged fraud and/or breach of fiduciary duty, (*see* Ex. E at 0049, p. 250/5-20 (Williams Dep.)), and/or that Autry had knowledge of any alleged fraud and/or breach of fiduciary duty, (*see id.* at 0047, p. 245/15-21 & 0048, pp. 248/23-249/13 (Williams Dep.)).  Accordingly, Autry is entitled to a summary judgment finding that Plaintiffs' fraud, conspiracy to defraud, and breach of fiduciary duty claims fail as a matter of law on no-evidence grounds.

### 2.    The evidence establishes that Autry did not benefit.

The undisputed summary judgment evidence establishes that Autry did not benefit from any alleged fraud and/or breach of fiduciary duty.  More specifically, the expert testimony of Lawrence F. Ranallo establishes the following:

(1)     Autry did not receive a benefit from the Chesapeake distribution relating to
Chem Source and Industrial Compounding. (*See* Ex. C at 0016-0018, ¶¶5(a) &
6-9 (Ranallo Decl.);  Ex. 108 at 0103-0105 & 0134-0135).  Autry received a
total of approximately $3.4 million from the entire Chesapeake deal.  (Ex. 108 at
0135 (Scenario A)).  This was less than the $6 million IES received for its 17%
interest in Chem Source, which was just one of the many subsidiaries of the
entities directly involved in the Chesapeake deal.  In other words, the $3.4
million Autry received required Autry's share of his interest in all of the
FracTech/WIG businesses, not just Chem Source.

Insofar as the Chem Source part of the Chesapeake transaction is
concerned, Autry lost money.  As explained by Mr. Ranallo, Autry actually lost
$1.411 million, representing the difference between the $1.92 million paid by
Autry for his pro-rata portion (i.e., 16%) of the purchase price (i.e., $12 million)
for IES's and Jacobi's Chem Source units and the at most $.509 million in total
from the Chesapeake deal which was attributable to the Chem Source units.[8]
(*See* Ex. C at 0017-0018, ¶¶8-9 (Ranallo Decl.);  Ex. 108 at 0103-0105 & 0134-
0135).

(2)     Autry's increased effective ownership in Chem Source and Industrial
Compounding resulted in no benefit to Autry.  (*See* Ex. C at 0016, ¶5(b) &
0018-0019, ¶¶10-12 (Ranallo Decl.);  Ex. 108 at 0105-0106).  As explained by
Mr. Ranallo, any distributions from WIG to Autry subsequent to the Chesapeake
transaction and other than the $3.4 million paid to Autry from that transaction
were to pay taxes and were offset by Autry's tax liability, so as to result in no

---

[8] Note that WIG handled all the math and accounting on the transaction.

net cash benefit to Autry. (*See* Ex. C at 0018-0019, ¶11 (Ranallo Decl.); Ex. 108 at 0105-0106). Furthermore, Autry has received no cash consideration for his 8% interest in WIG which was taken from him by WIG on April 25, 2008. (*See* Ex. C at 0019, ¶12 (Ranallo Decl.); Ex. 108 at 0105-0106; Ex. B at 0009, ¶7 (Autry Decl.)).

    (3)    Autry did not receive a cash benefit from the exchange of WIG shares for Cisco High-Lift shares. (*See* Ex. C at 0016-0017, ¶5(c) & 0019, ¶13 (Ranallo Decl.); Ex. 108 at 0106). As explained by Mr. Ranallo, as part of the restructuring of WIG and its affiliates, Autry exchanged 8% of his 16% ownership interest in WIG (the majority interest holder of Chem Source) for an 8% interest in Cisco High-Lift. Since the enterprise value of Autry's 8% ownership in Chem Source and Industrial Compounding was $502,000 greater than an 8% ownership in Cisco High-Lift and the $502,000 was not paid to Autry, Autry has not received a cash benefit from this exchange. (*See* Ex. C at 0019, ¶13 (Ranallo Decl.); Ex. 108 at 0106; Ex. B at 0009, ¶7 (Autry Decl.)).

Accordingly, Autry is entitled to a summary judgment finding that Plaintiffs' fraud, conspiracy to defraud, and breach of fiduciary duty claims fail as a matter of law on this additional ground.

### 3. The evidence establishes that Autry had no knowledge of fraud or breach of fiduciary duty.

The undisputed summary judgment evidence establishes that Autry did not have knowledge of any alleged fraud and/or breach of fiduciary duty. (Ex. B at 0008, ¶6 (Autry Decl.)). Accordingly, Autry is entitled to a summary judgment finding that Plaintiffs' fraud, conspiracy to defraud, and breach of fiduciary duty claims fail as a matter of law on this additional ground.

**J.**    *Autry did not make any negligent misrepresentations to Plaintiffs.*

Plaintiffs allege that Autry made negligent misrepresentations to Plaintiffs.  (Pl.'s Second Am. Compl. [Doc. No. 77] at p. 14, ¶53).  This claim fails as a matter of law because: (1) there is no evidence of one or more essential elements of Plaintiffs' negligent misrepresentation claim against Autry; and/or (2) the undisputed summary judgment evidence establishes that Autry did not make any negligent misrepresentation to Plaintiffs.

**1.    There is no evidence of one or more essential elements of Plaintiffs' negligent misrepresentation claim against Autry.**

The elements of negligent misrepresentation are: (1) the defendant made a representation to the plaintiff in the course of the defendant's business, profession or employment, or in any transaction in which the defendant had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business transactions; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the representation; and (5) the defendant's negligent misrepresentation proximately caused the plaintiff's injury.  *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).  After thorough discovery, there is simply no evidence of any of the following: (1) that Autry made a representation to the Plaintiffs in the course of Autry's business, profession or employment, or in any transaction in which Autry had a pecuniary interest; (2) that Autry supplied false information for the guidance of Plaintiffs in their business transactions; (3) that Autry did not exercise reasonable care or competence in obtaining or communicating the information; (4) that Plaintiffs justifiably relied on the representation; (5) that Autry's alleged negligent misrepresentation proximately caused Plaintiffs' injury; and/or (6) that Plaintiffs suffered any damages.  (*See* Ex. E at 0049, pp. 250/21-252/1 (Williams Dep.)).  Also, Plaintiffs' only damage theory is not based on out-of-pocket damages, which are the only damages recoverable for negligent misrepresentation.  *See D.S.A., Inc. v. Hillsboro ISD*, 973 S.W.2d 662, 663-64 (Tex. 1998); *Allied*

*Vista v. Holt*, 987 S.W.2d 138, 143 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Accordingly, there is no evidence of damages. Therefore, Autry is entitled to a summary judgment finding that Plaintiffs' negligent misrepresentation claim fails as a matter of law on no-evidence grounds.

> **2.    The evidence establishes that Plaintiffs' negligent misrepresentation claim against Autry fails as a matter of law.**

As previously stated, Plaintiffs admit that Autry did not make any negligent misrepresentations to them. (Ex. E at 0049, pp. 250/21-252/1 (Williams Dep.)). Accordingly, based on the undisputed summary judgment evidence, Autry is entitled to a summary judgment finding that Plaintiffs' claim in this regard fails as a matter of law on this additional ground.

**K.    *Autry did not breach any contract with Plaintiffs.***

Plaintiffs allege that Autry "breached the formation agreement of Chem Source by self-dealing, failure to provide a truthful and adequate accounting, and by failing to make reasonable disbursements of profit . . .." (Pl.'s Second Am. Compl. [Doc. No. 77] at p. 14, ¶54). This claim fails as a matter of law because: (1) there is no evidence of one or more essential elements of Plaintiffs' breach of contract claim against Autry; and/or (2) the undisputed summary judgment evidence establishes that Autry did not breach any contract with Plaintiffs given, among other things, that Autry is not a party to any contract with Plaintiffs, including, but not limited to, the Chem Source formation agreement.

> **1.    There is no evidence of one or more essential elements of Plaintiffs' breach of contract claim against Autry.**

The elements of a breach of contract claim are: (1) there is a valid, enforceable contract between the plaintiff and the defendant; (2) the plaintiff has standing to sue for breach of the contract; (3) the plaintiff performed, tendered performance, or was excused from performing its

contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff injury. *See Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14[th] Dist.] 2005, pet. denied) (elements 1, 3-5); *Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856, 862 (Tex. App.—San Antonio 2003, no pet.) (element 2). After thorough discovery, there is simply no evidence of any of the following: (1) that Autry was a party to a valid, enforceable contract with Plaintiffs, (*see* Ex. E at 0049, p. 252/2-8 (Williams Dep.)); (2) that Autry breached any alleged contract with Plaintiffs; and/or (3) that Autry's alleged breach caused the Plaintiffs injury. Accordingly, Autry is entitled to a summary judgment finding that Plaintiffs' breach of contract claim against Autry fails as a matter of law on no-evidence grounds.

> **2.     The evidence establishes that Plaintiffs' breach of contract claim against Autry fails as a matter of law.**

As previously stated, Plaintiffs admit that Autry is not a party to any contracts to which Plaintiffs are also a party. (Ex. E at 0049, p. 252/2-8 (Williams Dep.)). Accordingly, based on the undisputed summary judgment evidence, Autry is entitled to a summary judgment finding that Plaintiffs' breach of contract claim against Autry fails as a matter of law on this additional ground.

## L.     *Plaintiffs did not suffer any damages.*

Plaintiffs allege that they have suffered actual damages in the form of "the difference between the amount they were paid for their interests in Chem Source and Industrial Compounding, and the actual value of those interests at the time they sold their interests to World, in light of all facts relative to the 'Chesapeake opportunity,' or any other reasonable measure of damages that adequately compensates them for their losses caused by the alleged fraud above." (Pl.'s Second Am. Compl. [Doc. No. 77] at p. 15, ¶57). This claim fails as a matter of law because, as set forth above, all of Plaintiffs' other claims against Autry for which they seek damages fail as a matter of law.

*M.*     *Plaintiffs' exemplary damages claim fails as a matter of law.*

Plaintiffs allege that they are entitled to recover exemplary damages from Autry based on Autry's alleged "commission of fraud and breach of fiduciary duty and other duties . . .." (Pl.'s Second Am. Compl. [Doc. No. 77] at p. 15, ¶58). As set forth above, Plaintiffs' claims against Autry for fraud and breach of fiduciary duty and other duties fail as a matter of law. Therefore, Plaintiffs' exemplary damages claim against Autry also fails as a matter of law.

*N.*     *Plaintiffs' claim for attorneys fees fails as a matter of law.*

Plaintiffs allege that they are entitled to recover attorneys fees for the prosecution of their action under breach of contract. (Pl.'s Second Am. Compl. [Doc. No. 77] at p. 15, ¶63). As set forth above, Plaintiffs' breach of contract claim against Autry fails as a matter of law. Therefore, Plaintiffs' claim for attorneys fees against Autry also fails as a matter of law.

For all the foregoing reasons, Defendant Franklin Autry respectfully requests that the Court grant his motion for summary judgment. Further, and/or in the alternative, if the Court does not grant Autry's motion for summary judgment in its entirety, Autry respectfully requests that the Court grant him summary judgment on each of Plaintiffs' claims for which Autry has shown himself entitled to summary judgment. Autry further prays for any additional relief to which he may show himself to be entitled.

Dated: March 3, 2009                    Respectfully submitted,

                                        /s/ Walker C. Friedman
                                        Walker C. Friedman
                                        State Bar No. 07472500
                                        Christian D. Tucker
                                        State Bar No. 00795690
                                        FRIEDMAN, SUDER & COOKE
                                        Tindall Square Warehouse No. 1
                                        604 East 4th Street, Suite 200
                                        Fort Worth, Texas 76102
                                        Telephone:  817.334.0400
                                        Telecopier:  817.334.0401

                                        **ATTORNEYS FOR
                                        DEFENDANT FRANKLIN AUTRY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was electronically served upon counsel of record this 3rd day of March, 2009, as follows:

Marshall M. Searcy, Jr.
Derek W. Anderson
Chris S. Greer
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
marshall.searcy@khh.com
derek.anderson@khh.com
chris.greer@khh.com

Bill Hicks
Sharon Hicks
P.O. Box 1587
Cisco, Texas 76437
bhicks@fractech.net
shicks@fractech.net

John Smithee
Brian P. Heinrich
David M. Russell
Templeton, Smithee, Hayes, Heinrich & Russell, L.L.P.
320 S. Polk, Suite 1000, Lobby Box 5 (79101)
P.O. Box 15010 (79105)
Amarillo, Texas
john@templetonsmithee.com
brian@templetonsmithee.com
david@templetonsmithee.com

/s/ Walker C. Friedman
Walker C. Friedman